MEDLEY v. BROWN, County Judge, et al. (No. 8770.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 19, 1918. Rehearing Denied Feb. 23, 1918.)

JUDGMENT ☞590(2)—RES JUDICATA—CHANGED CONDITIONS.

Recovery of damages for obstructing access to property by erection of a bridge in front of it at a higher grade bars plaintiff, after he has raised his house to the bridge level, from recovering damages for the obstruction of access to his premises by the bridge balustrade, a permanent part of the bridge and not changed since the first action, and also from claiming a mandatory injunction requiring the tearing down of the bridge balustrade in front of his property; for the test of whether the same evidence would support both actions does not apply, plaintiff himself having caused the changed conditions.

Appeal from District Court, Tarrant County; Ben M. Terrill, Judge.

Action by H. C. Medley against Jesse Brown, County Judge, and others. From judgment for defendants, plaintiff appeals. Affirmed.

Marvin H. Brown and Ocie Speer, both of Ft. Worth, for appellant. Marshall Spoonts and J. E. Mercer, both of Ft. Worth, for appellees.

DUNKLIN, J. H. C. Medley is the owner of a lot of land abutting on the Arlington Heights boulevard in the city of Ft. Worth in close proximity to Trinity river, and at a point where Tarrant county has constructed a bridge across the river. At the point where the lot abuts on the highway the bridge is 20 feet above the level of the ground. Prior to the institution of the present suit he instituted a former suit against the county for damages for obstructing ingress to and egress from the lot by means of the bridge. The former suit was instituted against both the county and the Ft. Worth Improvement District No. 1, a private corporation that had constructed a levee near the property to confine the water in the river during its overflow. Upon the trial of that suit the jury in answer to special issues found that prior to the construction of the bridge and levee the market value of plaintiff's property was $4,000, and that by reason of those obstructions the market value of the property was depreciated $2,500, one half of which depreciation was caused by the erection of the bridge and the other half by the levee, thus leaving the market value of the lot at the time of the trial of the former suit to be $1,500. There was no appeal from that judgment, and the $2,500 damages allowed plaintiff therein was collected, and, with $1,350 of the proceeds, plaintiff raised the house on the lot to a level with the bridge.

In the present suit, which was instituted against Tarrant county, Medley sought a mandatory injunction to compel the commissioners' court to cut the balustrade of the bridge immediately in front of his lot, so as to allow him access to his house from the bridge, and in the second count of his petition he prayed in the alternative for a judgment against the county in the sum of $10,000 as damages to his property by reason of such obstruction of access to his property; and from a judgment in favor of the county, he has prosecuted this appeal. The former judgment was pleaded by the county as res adjudicata, and that plea was sustained by the trial court.

The petition and judgment in the former suit were introduced in evidence and appear in the statement of facts. In that petition it was alleged that prior to the erection of the bridge plaintiffs' property was improved with buildings, and was valuable both as business and residence property, having a rental value of $75 per month, and a market value of $10,000; that its value was wholly destroyed by reason of the fact that access thereto was wholly cut off by reason of the bridge, and plaintiff prayed for a judgment for the value of his property, or, in the alternative, for the deterioration in its value by reason of the bridge and levee. And in all other respects the allegations with reference to the injury to plaintiff's property by reason of his deprivation of access thereto from the highway was substantially the same in the petitions in the former suit and in the present suit, save and except that in the petition in the present suit the raising of the house upon the lot to a level with the bridge is alleged in connection with further allegations that by cutting the balustrade of the bridge in front of his property, and thus giving him ingress and egress to and from the building situated on the lot, the property could be utilized advantageously to plaintiff; while in the former suit it was alleged that by reason of the bridge the property could not be

used for any purpose whatsoever. The property fronted south on the bridge, and in the petition in the former suit it was alleged that a concrete wall constituting a part of the bridge was built from the ground at the southern boundary of his lot to a height of 25 feet. This wall extended above the floor of the bridge, and that portion of it above the floor is what is known as the balustrade, which extended the entire length of the bridge. We are unable to perceive any escape from the conclusion that the plea of res adjudicata was properly sustained. Grayson Co. Bank v. Wandelohr, 105 Tex. 226, 146 S. W. 1186; Hermann v. Allen, 103 Tex. 382, 128 S. W. 115; Nichols v. Dibrell, 61 Tex. 539; Hanrick v. Gurley, 93 Tex. 479–480, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330; Flippen v. Dixon, 83 Tex. 421.[1] In Hermann v. Allen, supra, the following was said by Justice Williams:

"The pleadings certainly put in issue (1) the right of the defendants therein to move the house, and (2) the right of Allen to recover damages caused by Herman's interference with that right. The judgment determined the first in his favor, saying nothing about the second. This was necessarily an adjudication that that which was given was all that he had shown himself to be entitled to. The necessary legal effect of the failure to award damages for which a claim was pending in the pleadings was a denial of the right to them. This does not mean that it appears the court actually made a decision upon the plea in reconvention. The record does not show whether that was done or not. The proposition is that the necessary legal effect of a final judgment is to determine finally a cause of action set up in the pleadings and pending for decision in the cause when that judgment is pronounced, unless, indeed, the court exclude it from the scope of its action; and this whether the judgment result from actual decision or oversight of the court. That which is adjudged is the decision of the court that it is all the parties are entitled to. In determining the effect of a judgment it sometimes is important to inquire whether or not a particular question or issue was tried and decided in the cause in which the judgment was rendered. That is true when, although the cause of action is not the same in the second as that decided in the first action, it is claimed that a party to the second is estopped upon a question common to both which was decided in the first. Nichols v. Dibrell, 61 Tex. 541; Hanrick v. Gurley, 93 Tex. 480 [54 S. W. 347, 55 S. W. 119, 56 S. W. 330], and authorities cited. Such an inquiry is out of place where the cause of action is the same in the two causes and a final judgment on the merits has been rendered in the first."

Appellant has cited many cases announcing the general rule to be that the test of res adjudicata is whether or not the same evidence would support both actions such as U. S. v. Haytian Republic, 154 U. S. 118, 14 Sup. Ct. 992, 38 L. Ed. 930; Water Co. v. Hutchinson, 160 Fed. 41, 90 C. C. A. 547, 19 L. R. A. (N. S.) 219; Hodge v. Shaw, 85 Iowa, 137, 52 N. W. 8, 39 Am. St. Rep. 290. Invoking that test, appellant insists that the plea is not applicable here, because when the former suit was tried the house upon his lot had not been elevated to a level with the bridge, and that as evidence of that fact was admissible in the present suit and not in the former suit, the causes of action are not the same. But the fact is that the bridge is a permanent improvement, and that plaintiff was allowed full damages to his property by reason of its erection. In that suit he was entitled to recover damages to his property for all uses for which it was adapted, and as he accepted the amount recovered by him therein, he is conclusively estopped from now claiming by another suit additional damages for the same obstruction, and also from claiming a mandatory injunction requiring the tearing down of the balustrade of the bridge in front of his property. S. L. S. W. Ry. Co. v. Anderson, 173 S. W. 908, and cases there cited. To hold otherwise would be to say that plaintiff not only could recover damages for the obstruction in the present suit in addition to amount already received by him, but in the future could recover other damages for the obstruction of some other use to which he might desire to subject his property; and to allow him to do so, we think clearly would be contrary to the essential elements of the defense of res adjudicata.

For the reason indicated, the judgment of the trial court will be affirmed.

Affirmed.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.

